COURT OF APPEALS OF VIRGINIA


Present:   Judges Elder, Kelsey and McClanahan
Argued at Alexandria, Virginia


LYSA SCHWARTZ
                                                          OPINION BY
v.        Record No. 2885-04-4                    JUDGE LARRY G. ELDER
                                                          JULY 26, 2005
ADAM SCHWARTZ


FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
Jonathan C. Thacher, Judge

Mark B. Sandground, Sr. (M. Rachel Kanukolanu; Sandground
New & Lowinger, P.C., on brief), for appellant.

Ilona Ely (Freedman) Grenadier (Charles A. Anderson; Stephen K.
Simpson; Arlene Starace; Benton S. Duffett, III; Elaine Vadas; John
Winkler; Lisa Levi; Grant Moher; Heather Jenquine; Grenadier,
Anderson, Simpson & Duffett, P.C., on brief), for appellee.


Lysa Schwartz (mother) appeals from an order finding her in contempt of a consent

*pendente lite* order that she entered into with her husband, Adam Schwartz (father), concerning,

*inter alia*, the parties' two minor children.  On appeal, mother contends the court violated Code

§ 20-124.3:1 by admitting testimony about her from the children's therapist without her consent.

Mother also contends that, in light of the erroneous admission of this evidence, the trial court

erred in requiring her to pay a portion of the attorney's fees father incurred for the contempt

proceedings.  We hold the admission of the challenged evidence was reversible error.  Thus, we

reverse the finding of contempt, vacate the award of attorney's fees, and remand for a

determination anew in light of the evidence properly before the court.

## BACKGROUND

The parties were married in 1988. Two children were born of the marriage, the first in 1992 and the second in 1995. On February 18, 2004, mother filed a bill of complaint for divorce, alleging the parties were living separate and apart in the marital residence.[1] She also filed a motion for *pendente lite* relief. Father filed a cross-bill for divorce and his own motion for *pendente lite* relief. The court subsequently entered a consent *pendente lite* order and amended consent *pendente lite* order.

Thereafter, father filed a verified petition for issuance of a rule to show cause, and mother filed a similar petition. Father complained, *inter alia*, that mother violated the provision of the consent order that neither party was to denigrate or ridicule the other parent to the children. He also complained that mother failed to keep him apprised of the children's schedules as required by the order, failed to use a computer program to facilitate that communication as required by the order, and "continually encroached on [his] custodial time with [the] children." The trial court issued rules to show cause for both petitions and scheduled them for hearing on October 14, 2004. At the time of the hearing on the rule, father also complained that mother moved out of the marital residence with the children without giving him thirty days' notice of her new address as required by the order.

Father offered the testimony of licensed clinical psychologist Dr. Guy Van Syckle. Mother objected to his testimony under Code § 20-124.3:1 because that statute "states, No mental health provider shall testify on behalf of or against a parent unless they have advanced written consent by that party." Father responded that Dr. Van Syckle was not the mental health

---

[1] Mother originally sought a divorce on fault grounds, but she and father later agreed to proceed based on a one-year separation.

care provider for either parent. The trial court overruled mother's objection, stating, "He's a mental health care provider for the children. The best interest of the children still prevails as a standard of this Court."

Dr. Van Syckle testified that the parties were referred to him "by their attorneys . . . at the beginning of April [2004]." When asked, "And did you then become the therapist for the children?", Dr. Van Syckle responded as follows: "I became what was called a co-parenting coordinator, co-therapist for the parents with the understanding I would eventually meet and work with the children." He was "not retained to do a neutral custody evaluation" and testified he was not at the show cause hearing to render "an opinion or recommendation regarding custody and visitation."

Dr. Van Syckle met with each parent individually for one session and met with them together for four or five sessions. He then met with the children for about eight sessions, during four of which they were accompanied by mother and four by father. He may also have had individual sessions with only the children. Dr. Van Syckle gave extensive testimony regarding the parties' interactions with each other and their children, as well as what the children said about their parents and what the parents said about each other. That testimony included Dr. Van Syckle's statement that he "got quite a bit of information from the children [that father] was being undermined as a parent in the home" by mother. Dr. Van Syckle also observed that mother "would spend the entire session with the children devaluing their father outright" and said he could "not recall a supportive statement [about father] that she did make during any of the sessions," either alone or in the presence of the girls, which he described as "unusual."

Father also testified about mother's failure to comply with the consent *pendente lite* order. Mother gave testimony that conflicted with father's and Dr. Van Syckle's.

In argument on the rule, father's counsel repeatedly relied on the testimony of Dr. Van Syckle as evidence from a "totally neutral" person that mother "ha[d] done everything she [could] to make sure [the provisions of the consent *pendente lite* order] didn't work" and that she had repeatedly denigrated and devalued father in the presence of the children. Father asked, *inter alia*, that mother be ordered "to pay for the time that it has taken us [and Dr. Van Syckle] to be here."

At the conclusion of the hearing on father's show cause rule, the court found as follows:

> [Mother], you've got to abide by the Court's order. I find as clear[ly] and unequivocally as I can find, in this case, you have not done that. You have violated this Court's order in the worst possible ways.
>
> First of all, you moved without 30 days' notice. And I'll be candid with you. That doesn't cause me great heartache. . . . It's a technical violation of the order. That, in and of itself, is sufficient to find you in contempt. However, when I listen to the testimony, particularly Dr. Van Syckle's -- you know, your discussions with your children, you[r] denigrating [father]. All of that is unacceptable . . . .
>
> One of the things you need to be aware of is that one of the criteria for custody is the ability of the custodial parent to foster the relationship of the children with the noncustodial parent. That's positive fostering. I find on this record you have zero positive fostering. Dr. Van Syckle even said it, you didn't have one single positive thing to say about the girls' father. I mean, there has got to be something that he does well, even if he's just a good soccer coach. Not one -- not one positive thing.
>
>      \*       \*       \*       \*       \*       \*       \*
>
> . . . I'm going to postpone a determination as to what to do with the contempt of [mother] until the next hearing until I've heard the . . . rule to show cause [against father]. But I will tell you that there better be some cooperation between the two of you over the children.

The court then entered an order finding mother in contempt. That order did not articulate the precise basis on which the contempt finding was predicated, but it did indicate that until such

time as the court determined the appropriate sanctions for the contempt, "the parties are expected to cooperate with each other with respect to the children and with respect to fostering the relationship between the children and each parent." Mother objected to the finding of contempt on the ground that "the only evidence of such was the testimony of the children's mental health provider, who provided testimony for the father and against the mother, over the mother's objection pursuant to Va. Code § 20-124.3:1" and that "[t]he admission of such testimony constituted error."

When the parties returned to court about six weeks later, on December 2, 2004, father offered testimony that mother continued to violate the order and again requested an award of attorney's fees. In argument, father's counsel again referred to the testimony of Dr. Van Syckle, arguing, "[Mother] does not want [father] to be a participating parent; that is clear. Dr. Van [Syckle's] words are still ringing in my mind, she hates him." Mother's attorney and the court then engaged in the following exchange:

> [MOTHER'S ATTORNEY]: . . . I hate to keep coming back to this -- but I do need to point out that -- and particularly because [father's attorney] keeps wanting to, you know, quote or paraphrase from Dr. Van [Syckle's] testimony -- is that Dr. Van [Syckle's] testimony came in over my objection, contrary to the statute. And the whole reason that she was found in contempt is because there was inadmissible evidence that was heard.

> THE COURT: Well, I've already ruled on that. And the reason that she was found in contempt was because of her conduct, her program of not permitting the father -- who she had joint custody with -- to have time with the children.

> Her comments like these kids only need one parent, denigrating the other parent in front of the children. And in fact, if you recall, Dr. Van [Syckle] said he even had that conduct in his office, and he had to call her down about it and say, don't do that when we're having a joint session here, right?

> [MOTHER'S ATTORNEY]: Your Honor wouldn't have heard any of that if that evidence hadn't come in contrary to the statute.

THE COURT: There was a host of other evidence in addition to that about her conduct, so I don't think that's a viable defensive position. But I hear your argument.

On the issue of attorney's fees, the court noted it had conducted two hearings and had "found in very clear and unambiguous terms that [mother] was clearly in violation of the Court's order." As a result, it ordered mother to pay $8,000 toward father's attorney's fees. It entered an order to that effect, and mother again noted her objection, claiming the court improperly allowed Dr. Van Syckle to testify over her objection and that "there was no admissible evidence to support the finding of contempt."

Mother noted this appeal.

II.

ANALYSIS

Code § 20-124.3 requires a court to consider, *inter alia*, the "mental condition of each parent" in determining what custody or visitation arrangements are in the best interests of the child. See also Code § 20-107.1(E)(4) (requiring consideration of "[t]he age and physical and mental condition of the parties and any special circumstances of the family" in determining spousal support); Code § 20-107.3(E)(4) (requiring consideration of "[t]he ages and physical and mental condition of the parties" in equitably distributing marital property).

Prior to July 1, 2003, the only statutes governing the admissibility of the testimony of a licensed mental health care provider in a child custody or visitation proceeding were Code § 8.01-399, which applied to any "duly licensed practitioner of any branch of the healing arts," and Code § 8.01-400.2, which applied to certain licensed professional counselors, clinical social workers and psychologists. Both provided a privilege for diagnosis and treatment the provider gave his or her "patient" or "client" and for any communications made by the "patient" or "client" in the course of the professional relationship. Code §§ 8.01-399(A), -400.2. However,

both statutes provided the privilege was inapplicable if "the physical or mental condition of the [patient or client] is at issue in [a civil] action."[2]  Code §§ 8.01-399(B), -400.2.

---

[2] Those statutes provided in relevant part as follows:

> Code § 8.01-399.  Communications between physicians and patients.
>
> A. Except at the request or with the consent of the patient, or as provided in this section, no duly licensed practitioner of any branch of the healing arts shall be required to testify in any civil action, respecting any information that he may have acquired in attending, examining or treating the patient in a professional capacity.
>
> B. *If the* physical or *mental condition of the patient is at issue in a civil action*, the diagnosis or treatment plan of the practitioner, as documented in the patient's medical record, during the time of the practitioner's treatment, together with the facts communicated to, or otherwise learned by, such practitioner in connection with such attendance, examination or treatment shall be disclosed but only in discovery pursuant to the Rules of Court or through testimony at the trial of the action.  In addition, disclosure may be ordered when a court, in the exercise of sound discretion, deems it necessary to the proper administration of justice. . . .

Code § 8.01-399 (emphasis added).

> Code § 8.01-400.2.  Communications between counselors, social workers and psychologists and clients.
>
> Except at the request of or with the consent of the client, no licensed professional counselor, as defined in § 54.1-3500, licensed clinical social worker, as defined in § 54.1-3700, or licensed psychologist, as defined in § 54.1-3600, shall be required in giving testimony as a witness in any civil action to disclose any information communicated to him in a confidential manner, properly entrusted to him in his professional capacity and necessary to enable him to discharge his professional or occupational services according to the usual course of his practice or discipline, wherein such person so communicating such information about himself or another is seeking professional counseling or treatment and advice relative to and growing out of the information so imparted; provided, however, that *when the* physical or *mental condition of the client is at issue in such action*, or when a court, in the exercise of sound discretion, deems such

As cited above, custody and visitation proceedings require courts to consider the mental health of the parties. See Code § 20-124.3. Thus, "lawyers and judges have been accustomed to breaching this area of confidentiality [in the context of custody and visitation] because the patient has placed his or her mental condition at issue." Elizabeth P. Coughter & Ronald R. Tweel, Family Law, 37 U. of R. Law Rev. 155, 170 (2002). The provisions of Code §§ 8.01-399 and -400.2 specifically support this result.

In 2002, however, the General Assembly passed new legislation specifically limiting the admissibility of mental health records in child custody and visitation proceedings. Code § 20-124.3:1, which took effect July 1, 2003, provides as follows:

> A. Notwithstanding any other provision of law, in any case in which custody or visitation of a minor child is at issue pursuant to § 20-124.2, whether in a circuit or district court, the records concerning a parent, kept by any licensed mental health care provider and any information obtained during or from therapy shall be privileged and confidential.

> B. In any case in which custody or visitation of a minor child is at issue pursuant to § 20-124.2, whether in a circuit or district court, a mental health care provider licensed in the Commonwealth may not be required to testify on behalf of or against a parent or any of the parent's adult relatives, and may do so only with the advance written consent of the parent. If the mental health care provider testifies, such testimony shall be limited to the custody or visitation case in question, and the provider's records and notes regarding that parent shall be admissible in the court proceeding. However, the court may order a licensed mental health care provider to testify on matters specifically related and limited to suspicion of an abused or neglected child as defined in § 63.2-100 of the Code of Virginia.

> disclosure necessary to the proper administration of justice, no fact communicated to, or otherwise learned by, such practitioner in connection with such counseling, treatment or advice shall be privileged, and disclosure may be required. The privileges conferred by this section shall not extend to testimony in matters relating to child abuse and neglect nor serve to relieve any person from the reporting requirements set forth in § 63.2-1509.

Code § 8.01-400.2 (emphasis added).

C. Nothing in this section shall supercede the provisions of § 63.2-1509 of the Code of Virginia related to the required reporting of suspicion of an abused or neglected child.

D. This section shall not apply to mental health care providers who have conducted or are conducting an independent mental health evaluation pursuant to a court order.

Mother contends that Code § 20-124.3:1 prevented husband from offering testimony about her from the mental health care provider appointed by the court to counsel the parties' children. Father contends, as the trial court ruled, that Code § 20-124.3:1 applies only when the parent is the patient. We agree with mother and hold that, in this case "in which custody or visitation of a minor child is at issue pursuant to § 20-124.2,"[3] the trial court erroneously admitted testimony "concerning a parent" that constituted "information obtained during . . . therapy."

> "'[T]he province of construction is wholly within the domain of ambiguity, and that which is plain needs no interpretation.'" Barnett v. D.L. Bromwell, Inc., 6 Va. App. 30, 34, 366 S.E.2d 271, 273 (1988) (quoting Winston v. City of Richmond, 196 Va. 403, 407-08, 83 S.E.2d 728, 731 (1954)). "'Non-technical words in statutes are taken to have been used in their ordinary sense and acceptation.'" Gomes v. City of Richmond, 220 Va. 449, 452, 258 S.E.2d 582, 584 (1979) (quoting Bd. of Supers. v. Boaz, 176 Va. 126, 130, 10 S.E.2d 498, 499 (1940)). . . . "Where the legislature has used words of a plain and definite import the courts cannot put upon them a construction which amounts to holding the legislature did not mean what it has actually expressed." Dominion Trust Co. v. Kenbridge Constr., 248 Va. 393, 396, 448 S.E.2d 659, 660 (1994) (citations omitted).

Crislip v. Commonwealth, 37 Va. App. 66, 71-72, 554 S.E.2d 96, 98 (2001). Further, statutes on the same subject matter, i.e., those standing *in pari materia*, must be considered together and harmonized if possible. Lambert v. Barrett, 115 Va. 136, 141, 78 S.E. 586, 587 (1913).

---

[3] Although the instant proceeding was for contempt, the larger suit of which it was a part included custody and visitation issues, which the trial court's comments about "positive fostering" made clear.

The language in Code § 20-124.3:1 is plain. Subsection (A) refers in broad terms to "the records concerning *a parent*, kept by a licensed mental health care provider and any information obtained during or from therapy." Code § 20-124.3:1(A) (emphasis added). Subsection (B) provides that the mental health care provider "may not be required to testify on behalf of or against *a parent* or any of the parent's adult relatives" without "the advance written consent of *the parent*." Code § 20-124.3:1(B) (emphases added).

Nothing in the language of Code § 20-124.3:1 as enacted requires that the parent must have been a patient in order to invoke the privilege. The language in the bill originally introduced in the House of Delegates, in contrast, referred to "a patient" rather than "a parent" and required consent of "the patient" before a mental health care provider could be "required to testify on behalf of or against a patient or any of the patient's relatives."[4] See H.B. 1001 (Jan. 9,

--------------

[4] The bill originally offered provided as follows:

§ 20-124.3:1. Custody and visitation; independent evaluations; arrangements; admissibility.

A. In any case in which custody or visitation of minor children is at issue pursuant to § 20-124.2, whether in a circuit or district court, the court may order an independent custody evaluation to assess the best interests of the child. The evaluations shall be performed by a psychiatrist, clinical psychologist, professional counsel, clinical social worker, or nurse practitioner specializing in mental health care who is licensed in the Commonwealth and, in the opinion of the court, is objective and impartial and appropriately qualified to perform an independent custody evaluation. The evaluator shall be a person who is familiar with the laws and regulations relating to suspicion of child abuse and neglect and family violence. A person who has ever provided mental health services to any member of the immediate family may not perform the evaluation.

B. The evaluator shall inform the persons being evaluated of the purpose, nature and method of evaluation and that the information obtained during the evaluation may be disclosed pursuant to a court proceeding. The evaluator shall properly apply techniques for interpretation and assessment that are reliable, valid

- 10 -

2002).  The House Committee for Courts of Justice then proposed a substitute bill that referred to "a parent" rather than "a patient," and the bill proceeded with that language.  H.B. 1001 (as substituted Feb. 8, 2002).  Because the statute as enacted refers to "a parent," coupled with legislative history implying a rejection of language limiting the privilege to "a patient," we must give the term, "parent," its ordinary meaning.

Interpretation of the statute by comparison to other, similar statutes supports this result.  Code §§ 8.01-399 and -400.2, in contrast to Code § 20-124.3:1, refer to the "patient" or "client" of a health care provider, showing that the General Assembly clearly knew how to limit a privilege in this fashion when it so desired.

Finally, the General Assembly included only a limited number of exceptions to the parental privilege of Code § 20-124.3:1.  The statute provides that "the court may order a licensed mental health care provider to testify on matters specifically related and limited to suspicion of an abused or neglected child as defined in [Code] § 63.2-100" and that "[n]othing in

and standardized.  The evaluator shall assess the parenting capacity of the parties and the psychological and developmental needs of the child and the extent to which the child's needs can be met by the parenting capacity of a party.  The evaluator shall not include any opinion regarding the psychological functioning of any individual who has not been personally evaluated by the evaluator.

C. The evaluator shall not have access to the records of a mental health care provider who provided mental health care to any relative of the person being evaluated.  The records of any licensed mental health care provider and any information obtained during or from therapy shall be privileged and confidential.

D.  A mental health care provider licensed in the Commonwealth may not be required to testify on behalf of or against a patient or any of the patient's relatives, and may do so only with the advance written consent of the patient.  If the mental health care provider testifies, such testimony shall be limited to the custody or visitation case in question, and the provider's records and notes regarding that patient shall be admissible in the court proceedings.

this section shall supercede the provisions of [Code] § 63.2-1509 . . . related to the required reporting of suspicion of an abused or neglected child." Code § 20-124.3:1(B), (C). It also exempts from the privilege "mental health care providers who have conducted or are conducting an independent mental health evaluation pursuant to a court order." Code § 20-124.3:1(D). Noticeably absent from Code § 20-124.3:1 is the provision contained in Code §§ 8.01-399 and 8.01-400.2 that permits disclosure "when a court, in the exercise of sound discretion, deems [such disclosure] necessary to the proper administration of justice." Code §§ 8.01-399(B), -400.2. In addition, Code § 20-124.3:1 provides no exception permitting the trial court to order disclosure for the broad purpose of determining the best interests of the child. Rather, Code § 20-124.2 embodies the General Assembly's chosen method for protecting the best interests of the child; it permits the court to "order an independent mental health or psychological evaluation to assist the court in its determination of the best interests of the child." Absent such an independent evaluation (and absent any suspicion of abuse or neglect), information "concerning a parent . . . obtained during or from therapy shall be privileged and confidential" and may not be disclosed without the parent's consent. Code § 20-124.3:1(D).

Thus, the trial court's admission of Dr. Van Syckle's testimony about mother, given without her written consent and over her express objection, was error.

Although the court erred in admitting Dr. Van Syckle's testimony, that error does not require reversal if we determine the error was harmless. Clay v. Commonwealth, 262 Va. 253, 259, 546 S.E.2d 728, 731 (2001); Lavinder v. Commonwealth, 12 Va. App. 1003, 1005, 407 S.E.2d 910, 911 (1991) (en banc); see Ferguson v. Commonwealth, 240 Va. ix, ix, 396 S.E.2d 675, 675 (1990) (citing Code § 8.01-678 for the proposition that "harmless-error review is required in all cases"). We conclude the error in admitting Dr. Van Syckle's testimony was not harmless.

In Virginia, non-constitutional error is harmless "[w]hen it plainly appears from the record and the evidence given at the trial that the parties have had a fair trial on the merits and substantial justice has been reached." Code § 8.01-678.

> "If, when all is said and done, [it is clear] that the error did not influence the [fact finder], or had but slight effect, . . . the judgment should stand . . . . But if one cannot say, with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error, it is impossible to conclude that substantial rights were not affected. . . . If so, or if one is left in grave doubt, the [judgment] cannot stand."

Clay, 262 Va. at 260, 546 S.E.2d at 731-32 (quoting Kotteakos v. United States, 328 U.S. 750, 764-65, 66 S. Ct. 1239, 1248, 90 L. Ed. 1557, 1566-67 (1946)).

Under this standard, non-constitutional error is harmless if other evidence of guilt is so "overwhelming" and the error so insignificant by comparison that we can conclude the error "failed to have any 'substantial influence' on the verdict." United States v. Lane, 474 U.S. 438, 450, 106 S. Ct. 725, 732, 88 L. Ed. 2d 814, 826 (1986) (quoting Kotteakos, 328 U.S. at 765, 66 S. Ct. at 1248, 90 L. Ed. at 1567); see also United States v. Hornaday, 392 F.3d 1306, 1316-17 (11th Cir. 2004), cert. denied, 73 U.S.L.W. 3733 (June 20, 2005) (discussing Kotteakos harmless error standard in context of "overwhelming" evidence of guilt). Also relevant to the harmless error analysis is whether the evidence admitted in error is merely "cumulative" of other, undisputed evidence. Brecht v. Abrahamson, 507 U.S. 619, 639, 113 S. Ct. 1710, 1722, 123 L. Ed. 2d 353, 373-74 (1993) (in analyzing whether error was harmless under Kotteakos standard, considering fact that improper "references to petitioner's post-Miranda silence were, in effect, cumulative" "in view of the State's extensive and permissible references to petitioner's pre-Miranda silence"); cf. Ferguson v. Commonwealth, 16 Va. App. 9, 12, 427 S.E.2d 442, 444-45 (1993) (applying Virginia harmless error standard prior to express adoption of Kotteakos test to hold error harmless if "other evidence of guilt is 'so overwhelming and the error so

- 13 -

insignificant by comparison that the error could not have affected the verdict,'" or, "even if the evidence of the defendant's guilt is not overwhelming, if the evidence admitted in error was merely cumulative of other, undisputed evidence" (quoting Hooker v. Commonwealth, 14 Va. App. 454, 458 n.2, 418 S.E.2d 343, 345 n.2 (1992))).

Here, Dr. Van Syckle provided the only independent testimony about the parties' relationship and mother's criticism of father in the presence of the children. Father's counsel relied repeatedly on Dr. Van Syckle's testimony in arguing that mother should be held in contempt for denigrating father to the children. Further, in finding mother in contempt due to her "unacceptable" behavior, the trial court said it "listen[ed] to the testimony, particularly Dr. Van Syckle's -- . . . mother's discussions with [the] children, [mother's] denigrating [father]." In later argument on the appropriate sanctions, the court again relied heavily on Dr. Van Syckle's testimony about mother's denigrating father in front of the children. Although the trial court subsequently said there was "a host of other evidence in addition to [Dr. Van Syckle's testimony] about her conduct," father's testimony regarding mother's denigration of father was not nearly as specific as Dr. Van Syckle's testimony and did not include evidence of the children's reaction to mother's behavior. Father testified merely that mother would not exchange pleasantries with him in front of the children and did not support his efforts to review their homework or enforce a particular bedtime. Dr. Van Syckle, by contrast, testified that mother called father names, criticized him in front of the children, and reduced one of the children to tears when the child questioned mother's negative comments about father. Although the trial court was free to find father's testimony more credible than mother's, we cannot conclude on this record that the erroneous admission of Dr. Van Syckle's testimony "did not influence" the trial court or "had but slight effect" on its decision to reject mother's testimony and hold her in contempt. See Clay,

262 Va. at 260, 546 S.E.2d at 731-32 (quoting <u>Kotteakos</u>, 328 U.S. at 764, 66 S. Ct. at 1248, 90 L. Ed. at 1566).

Thus, we hold the trial court's erroneous admission of Dr. Van Syckle's testimony was not harmless.

III.

For these reasons, we reverse the finding of contempt, vacate the award of attorney's fees, and remand for a determination anew in light of the evidence properly before the court.

<u>Reversed and remanded.</u>