COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:   Judges Frank, Huff and Senior Judge Haley


DONEICE REDD

v.      Record No. 1915-13-4

LOUDOUN COUNTY DEPARTMENT
  OF FAMILY SERVICES                                MEMORANDUM OPINION[*]
                                                          PER CURIAM
DONEICE REDD                                          APRIL 29, 2014

v.      Record No. 1991-13-4

LOUDOUN COUNTY DEPARTMENT
  OF FAMILY SERVICES


FROM THE CIRCUIT COURT OF LOUDOUN COUNTY
Burke F. McCahill, Judge

(Lorrie A. Sinclair; Sinclair Taylor PLLC, on brief), for appellant in
Record No. 1915-13-4.

(Robert M. Vernail, on brief), for appellant in Record
No. 1991-13-4.

(Sandra A. Glenney, Assistant County Attorney; Eric J. Demetriades,
Guardian *ad litem* for B.R.; Anne Wren Norloff, Guardian *ad litem*
for Ch.R., A.R, and Ca.R.; Hendrix/Demetriades, PC, on brief), for
appellee.


Doneice Redd (mother) appeals the orders terminating her parental rights to her children,

B.R., Ch.R., A.R., and Ca.R.[1]  In Record No. 1915-13-4, mother argues that the trial court erred by

(1) admitting B.R.'s medical and dental records into evidence without the custodian of the records

or doctor being present to authenticate the documents; (2) finding that the Loudoun County

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] Since the children are minors, we will refer to them by their initials.

Department of Family Services (the Department) provided sufficient rehabilitative services to mother in an effort to return B.R. home; (3) finding that Donetta Redd was not an appropriate relative placement for B.R.; and (4) finding that the evidence was sufficient to terminate mother's parental rights to B.R. pursuant to Code § 16.1-283(C)(2). In Record No. 1991-13-4, mother argues that the trial court erred by finding that (A) the evidence was sufficient to prove abuse or neglect of Ch.R., A.R., and Ca.R.; (B) the evidence was sufficient to terminate mother's parental rights to Ch.R., A.R., and Ca.R. pursuant to Code § 16.1-283(B); (C) the Department provided sufficient rehabilitative services to mother in an effort to return Ch.R., A.R., and Ca.R.; (D) Donetta Redd was not an appropriate relative placement for Ch.R., A.R., and Ca.R., and (E) the evidence was sufficient to terminate mother's parental rights to Ch.R., A.R., and Ca.R. pursuant to Code § 16.1-283(C)(2). Upon reviewing the record and briefs of the parties, we conclude that these appeals are without merit. Accordingly, we summarily affirm the decision of the trial court. See Rule 5A:27.

BACKGROUND

We view the evidence in the light most favorable to the prevailing party below and grant to it all reasonable inferences fairly deducible therefrom. See Logan v. Fairfax Cnty. Dep't of Human Dev., 13 Va. App. 123, 128, 409 S.E.2d 460, 462 (1991).

In November 2010, the Department received a report that B.R., mother's oldest child, went to the mobile dental clinic at his school and had only three normal and intact teeth. Subsequently, the Department filed a petition alleging that B.R. had been abused or neglected and removed him from the home on March 16, 2011. The petition was later amended by agreement, and the Loudoun County Juvenile and Domestic Relations District Court (the JDR court) entered an order finding that B.R. was a child in need of services.

The Department assigned a case management social worker to work with the family and provide home-based services. In October 2011, the Department filed petitions alleging abuse and neglect of mother's three youngest children, Ch.R., A.R., and Ca.R. The JDR court did not find that the three youngest children were abused or neglected, but did enter protective orders for the children. The three youngest children stayed with mother. The Department continued to provide home-based services and have a case management social worker work with the family.

The Department was concerned about mother's housing situation and her ability to care for the children. Mother lived with the children and her mother (the children's maternal grandmother) in a hotel. The social workers described the hotel room as dirty, "smelly," and "cluttered." The room had no table for dining, so the children ate on the floor. The Department was concerned about the children's nutrition because mother fed them "lots of junk food."

Despite services being offered to mother, the Department determined that mother was not able to care for the three youngest children. On November 19, 2012, the Department removed the three youngest children based on allegations of abuse and neglect. The JDR court found that the three youngest children were abused and/or neglected.

The Department filed petitions to terminate mother's parental rights to all of her children and filed foster care service plans with goals of adoption. On April 10, 2013, the JDR court entered an order terminating mother's parental rights to B.R. and approved the foster care plan with the goal of adoption. On June 26, 2013, the JDR court entered orders terminating mother's parental rights to Ch.R., A.R., and Ca.R. and approved the foster care plans with the goals of adoption.[2]

---

[2] The JDR court also entered orders at the same time terminating the parental rights of the fathers for the four children. Ca.R.'s father was unknown. B.R., Ch.R., and A.R. had the same father, who appealed the JDR court's decision to the trial court. The circuit court terminated the father's parental rights to B.R., Ch.R., and A.R. The father appealed the circuit court's rulings. On February 18, 2014, this Court entered an order granting the father's motion to withdraw his

When mother appealed the JDR court's rulings, the parties agreed to have the appeals heard at the same time. The trial court heard evidence and argument on August 21 and 22, 2013. At trial, Donetta Redd, mother's twin sister, asked that she be considered as a relative placement for the children. However, she was living with someone who had been convicted of a barrier crime.[3] The trial court denied Donetta Redd's request to have the children placed with her. At the conclusion of the hearing, the trial court held that there was sufficient evidence to terminate mother's parental rights to B.R. pursuant to Code § 16.1-283(C)(2) and her parental rights to Ch.R., A.R., and Ca.R. pursuant to Code § 16.1-283(B) and (C)(2). The trial court approved the foster care plans with the goals of adoption. These appeals followed.

ANALYSIS

Mother argues that the trial court erred by terminating her parental rights to her four children. When considering termination of parental rights, "the paramount consideration of a trial court is the child's best interests." Logan, 13 Va. App. at 128, 409 S.E.2d at 463. "Where, as here, the court hears the evidence *ore tenus*, its finding is entitled to great weight and will not be disturbed on appeal unless plainly wrong or without evidence to support it." Martin v. Pittsylvania Cnty. Dep't of Soc. Servs., 3 Va. App. 15, 20, 348 S.E.2d 13, 16 (1986) (citations omitted).

*B.R.'s medical and dental records*

Mother argues that the trial court erred in admitting B.R.'s medical and dental records because the Department did not introduce them through the custodian of records or the doctor. Code § 16.1-245.1 explains the procedure for the admission of medical and hospital records in

---

appeal in part and dismissing his appeal in part. See Tates v. Loudoun Cnty. Dep't of Family Servs., No. 1963-13-4 (Va. Ct. App. Feb. 18, 2014).

[3] He was convicted of a crime that would prevent him from being a foster parent. See Code §§ 63.2-1721 and -1719.

- 4 -

abuse and neglect cases in the juvenile and domestic relations district court.[4]  The Department

followed the procedure for the proceedings in the JDR court.  Mother contends Code

§ 16.1-245.1 does not apply to proceedings in the circuit court and the trial court erred by

admitting the records into evidence.

Assuming without deciding that the circuit court erred in admitting the medical records,

the error was harmless.  The standard for non-constitutional error is established in Code

§ 8.01-678, which provides, in pertinent part:

---

[4] Code § 16.1-245.1 states:

> In any civil case heard in a juvenile and domestic relations district
> court involving allegations of child abuse or neglect or family
> abuse, any party may present evidence, by a report from the
> treating or examining health care provider as defined in
> § 8.01-581.1 or the records of a hospital, medical facility or
> laboratory at which the treatment, examination or laboratory
> analysis was performed, or both, as to the extent, nature, and
> treatment of any physical condition or injury suffered by a person
> and the examination of the person or the result of the laboratory
> analysis.
>
> A medical report shall be admitted if the party intending to present
> such evidence at trial or hearing gives the opposing party or parties
> a copy of the evidence and written notice of intention to present it
> at least ten days, or in the case of a preliminary removal hearing
> under § 16.1-252 or § 16.1-253.1 at least twenty-four hours, prior
> to the trial or hearing and if attached to such evidence is a sworn
> statement of the treating or examining health care provider or
> laboratory analyst who made the report that (i) the information
> contained therein is true, accurate, and fully describes the nature
> and extent of the physical condition or injury and (ii) the patient
> named therein was the person treated or examined by such health
> care provider; or, in the case of a laboratory analysis, that the
> information contained therein is true and accurate.
>
> A hospital or other medical facility record shall be admitted if
> attached to it is a sworn statement of the custodian thereof that the
> same is a true and accurate copy of the record of such hospital or
> other medical facility. . . .

- 5 -

When it plainly appears from the record and the evidence given at the trial that the parties have had a fair trial on the merits and substantial justice has been reached, no judgment shall be arrested or reversed . . . [f]or any . . . defect, imperfection, or omission in the record, or for any other error committed on the trial.

"'If, when all is said and done, [it is evident] that the error did not influence the [trial court], or had but slight effect, . . . the judgment should stand . . . .'" Clay v. Commonwealth, 262 Va. 253, 260, 546 S.E.2d 728, 731-32 (2001) (quoting Kotteakos v. United States, 328 U.S. 750, 764-65 (1946)); see also Schwartz v. Schwartz, 46 Va. App. 145, 159, 616 S.E.2d 59, 66 (2005).

The Department presented sufficient evidence to terminate mother's parental rights to B.R. without the admission of the medical records. In issuing its ruling, the trial court commented on B.R.'s developmental delays and other psychological issues, not just his dental problems. The trial court found that mother had limitations which affected her ability to adequately care for B.R. and his siblings and she was unwilling to accept assistance. Regardless of whether the medical records were admitted, there was sufficient evidence to support the trial court's decision to terminate mother's parental rights to B.R.

*Sufficient rehabilitative services*

Mother argues that the trial court erred in finding that the Department provided sufficient rehabilitative services to mother in an effort to have all four of the children returned to the home.

Code § 16.1-283(B) and (C) consider the "reasonable and appropriate" rehabilitative services provided by the Department to a parent. "'Reasonable and appropriate' efforts can only be judged with reference to the circumstances of a particular case. Thus, a court must determine what constitutes reasonable and appropriate efforts given the facts before the court." Ferguson v. Stafford Cnty. Dep't of Soc. Servs., 14 Va. App. 333, 338, 417 S.E.2d 1, 4 (1992).

Initially, the Department became involved with the family because of concerns about B.R.'s dental health. Since B.R. only had three normal and intact teeth at the age of eight years old, the Department spoke with the mother about dental hygiene and the need for B.R. to see a dentist. Mother did not take B.R. to a dentist. Once the Department removed him from the home, B.R. had five dental appointments. The Department notified mother of the dental appointments and arranged transportation for her to come to the appointments. She went to one out of five appointments.

The Department also was concerned about mother's housing situation. She had been living in hotels with the maternal grandmother and the children for at least two years prior to the Department becoming involved with the family. The Department provided mother with information regarding housing, including referrals for the transitional housing program and shelter and an application for the program. A social worker offered to help mother with the application, but she refused. Mother testified that she was not interested in the transitional housing program because she would not have transportation to her job if she lived there. Another social worker researched numerous housing options for mother and drove her to several appointments. However, mother continued to reside in hotels.

The Department also arranged for mother, B.R., the father, and maternal grandmother to have psychological evaluations, performed by Dr. William Ling. Dr. Ling diagnosed B.R. with a pervasive developmental disorder on the autism spectrum, acquired as a result of neglect. Dr. Ling diagnosed mother with a mood disorder not otherwise specified and recommended that she "be seen by a psychiatrist for consideration of pharmacotherapy to address her affective disorder" and receive home-based services. Dr. Ling determined that mother's parenting capacity was "severely restricted." Based on Dr. Ling's recommendations, the Department recommended that mother participate in a psychiatric assessment, but mother refused. The

Department also recommended that Ch.R. have a neuropsychological evaluation, but mother would not cooperate.

In addition, the Department provided home-based services and arranged for visitations between mother and the children. The Department also referred mother to the Early Head Start program and day care services, but mother told the Department that she did not need the services.

"The Department is not required 'to force its services upon an unwilling or disinterested parent.'" Logan, 13 Va. App. at 130, 409 S.E.2d at 463-64 (quoting Barkey v. Commonwealth, 2 Va. App. 662, 670, 347 S.E.2d 188, 192 (1986)).

The trial court found that the Department's efforts were "significant and meaningful." The evidence supports the trial court's finding that the Department provided sufficient rehabilitative services to mother.

*Termination pursuant to Code § 16.1-283(C)(2)*

Mother argues that the trial court erred in terminating her parental rights to her four children pursuant to Code § 16.1-283(C)(2), which states that a court may terminate parental rights if:

> The parent or parents, without good cause, have been unwilling or
> unable within a reasonable period of time not to exceed twelve
> months from the date the child was placed in foster care to remedy
> substantially the conditions which led to or required continuation
> of the child's foster care placement, notwithstanding the
> reasonable and appropriate efforts of social, medical, mental health
> or other rehabilitative agencies to such end.

Mother argues that she improved her situation while the children were in foster care. She asserts that she looked for housing but could not find anything that was affordable and suitable for her family. She notes that she regularly visited with the children and points out that one of the home-based counselors testified that mother's interaction with B.R. improved over time.

> [S]ubsection C termination decisions hinge not so much on the
> magnitude of the problem that created the original danger to the

child, but on the demonstrated failure of the parent to make reasonable changes. Considerably more "retrospective in nature," subsection C requires the court to determine whether the parent has been unwilling or unable to remedy the problems during the period in which he has been offered rehabilitation services.

Toms v. Hanover Dep't of Soc. Servs., 46 Va. App. 257, 271, 616 S.E.2d 765, 772 (2005) (quoting City of Newport News Dep't of Soc. Servs. v. Winslow, 40 Va. App. 556, 562-63, 580 S.E.2d 463, 466 (2003)).

When it issued its ruling, the trial court noted that mother refused many services which would have improved her situation. She did not accept the Department's help with housing. She did not follow through with the psychiatric help. The trial court held that mother's "failure to address the psychiatric component is likely an obstacle in the future in terms of her progress." The trial court found that at times, mother was "uncooperative" and gave "misleading information or incorrect information or withheld information." The trial court held that mother was unwilling and refused to accept help. She also lacked "parental judgment and insight."

Furthermore, the trial court discussed the children's condition when they came into foster care. The trial court explained that B.R. was "almost nine years old and was not toilet trained and barely spoke. He was thin. And he had this fear of fire alarms." B.R. had to be placed in residential treatment twice while he was in foster care. B.R. "had a hysterical reaction to the news his mother would be visiting more . . . ." The younger children were "delayed" and said "very few words." Since being in foster care, the younger children's communication skills and motor skills started improving. A.R. became less withdrawn.

The trial court concluded that the children needed permanency. "It is clearly not in the best interests of a child to spend a lengthy period of time waiting to find out when, or even if, a parent will be capable of resuming his [or her] responsibilities." Kaywood v. Halifax Cnty. Dep't of Soc. Servs., 10 Va. App. 535, 540, 394 S.E.2d 492, 495 (1990).

Based on the evidence, the trial court did not err in terminating mother's parental rights pursuant to Code § 16.1-283(C)(2).

*Relative placement*

Mother argues that the trial court erred by finding that mother's twin sister, Donetta Redd, was not an appropriate relative placement for the children.

Before terminating a parent's rights, "the court shall give a consideration to granting custody to relatives of the child, including grandparents." Code § 16.1-283(A).

Donetta Redd testified that she was willing to care for the children. She lived with her boyfriend and children in a single family home. Donetta Redd and her boyfriend were employed. They started the process to become foster parents, and a home visit was conducted. They also participated in several of the family planning meetings. The Department determined that the children could not be placed with Donetta Redd because she was not married and her boyfriend had been convicted of possession with the intent to distribute in 1995. He served a three-year prison sentence and completed probation or parole in 1999. Once the Department determined that the children could not be placed with Donetta Redd, she stopped taking the necessary classes and participating in the planning meetings. She did not file a petition for custody, but did come to the trial to indicate her willingness to care for the children.

The trial court stated that the "disqualifiers" for the Department were "not necessarily" disqualifiers for the trial court "under these circumstances." Instead, the trial court focused on the fact that Donetta Redd and her boyfriend were not "aware of the special needs" of these children. The trial court commented on the boyfriend's testimony that he did not think B.R. needed "anything special." The trial court's response was, "And it is clear that this child has severe challenges and neither one [Donetta Redd nor her boyfriend] seems to have the insight to even address it." The trial court found their lack of insight into the children's needs to be "very,

very troubling," especially considering that Dr. Ling explained the children needed a "proactive advocate." The trial court also was concerned about the space in the home, their work hours, and their lack of meaningful participation in the process. Therefore, the trial court concluded that Donetta Redd did not have "the ability to effectively care for these children."

Contrary to mother's arguments, the trial court looked beyond the boyfriend's conviction to determine that Donetta Redd would not be a suitable relative placement. The trial court detailed its concerns with placing the children with Donetta Redd and did not err in finding that she was not a suitable relative placement.

*Abuse and/or neglect*

Mother argues that the trial court erred in finding that there was sufficient evidence of abuse and/or neglect of Ch.R., A.R., and Ca.R. Mother asserts that the children were not physically or mentally abused or injured. She contends there was no evidence that they were in substantial risk of death or bodily injury. She also notes that she provided for their basic needs of shelter and food.

The trial court concluded that the three younger children were neglected physically and emotionally. See Code § 16.1-228. "[T]he statutory definitions of an abused or neglected child do not require proof of actual harm or impairment having been experienced by the child." Jenkins v. Winchester Dep't of Family Servs., 12 Va. App. 1178, 1183, 409 S.E.2d 16, 19 (1991).

The trial court commented on mother's lack of parenting judgment and her refusal to accept assistance. The children lacked developmentally appropriate communication and motor skills. The trial court noted that mother frequently moved with the children. They lived in a "dirty, unkept room" with numerous people. They ate primarily junk food on the floor because there was no table at which they could eat.

Several social workers and home-based counselors testified about mother's lack of insight into her family's situation. Mother would tell them that things were going well or simply not respond to questions. Dr. Ling testified that mother acted with "inertia" and "did not appear to be able to respond to situations that would occur from a parenting perspective in a timely, efficient or consistent manner."

"The term 'substantial risk' [in Code § 16.1-228] speaks *in futuro* and the expert testimony in the record supports a finding that [mother's] mental incapacity prevented her from rendering appropriate parental care." Id.

The trial court did not err in finding that the children were neglected.

*Termination pursuant to Code § 16.1-283(B)*

Mother argues that the trial court erred in terminating her parental rights to her three youngest children pursuant to Code § 16.1-283(B), which states a parent's parental rights may be terminated if:

> 1. The neglect or abuse suffered by such child presented a serious and substantial threat to his life, health or development; and
>
> 2. It is not reasonably likely that the conditions which resulted in such neglect or abuse can be substantially corrected or eliminated so as to allow the child's safe return to his parent or parents within a reasonable period of time. In making this determination, the court shall take into consideration the efforts made to rehabilitate the parent or parents by any public or private social, medical, mental health or other rehabilitative agencies prior to the child's initial placement in foster care.

"[S]ubsection B [of Code § 16.1-283] 'speaks prospectively' and requires the circuit court to make a judgment call on the parent's ability, following a finding of neglect or abuse, to substantially remedy the underlying problems." Toms, 46 Va. App. at 270-71, 616 S.E.2d at 772 (quoting Winslow, 40 Va. App. at 562-63, 580 S.E.2d at 466).

As discussed above, the trial court found that the three youngest children were neglected and that mother did not substantially remedy her situation, despite the numerous services provided to her. Mother did not resolve the issues of housing, parenting skills, and mental health. She was not in a position to care for the children and meet their needs. Consequently, the trial court did not err in terminating mother's parental rights to Ch.R., A.R., and Ca.R. pursuant to Code § 16.1-283(B).

## CONCLUSION

For the foregoing reasons, the trial court's rulings are summarily affirmed. Rule 5A:27.

Affirmed.