COURT OF APPEALS OF VIRGINIA

Present:  Judges Humphreys, McCullough and Senior Judge Haley
Argued at Chesapeake, Virginia

UNPUBLISHED

FREDDIE LEE HALL, JR.

                                        MEMORANDUM OPINION[*] BY
v.      Record No. 1626-13-1                JUDGE JAMES W. HALEY, JR.
                                           NOVEMBER 18, 2014

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF PORTSMOUTH
James C. Hawks, Judge

W. McMillan Powers, Assistant Public Defender, for appellant.

Christopher P. Schandevel, Assistant Attorney General (Mark R.
Herring, Attorney General, on brief), for appellee.


Freddie Lee Hall, Jr. appeals his jury conviction for first-degree murder. He contends the trial court erred by overruling his objection to the admission into evidence of a receipt found in his car. Specifically, he argues the receipt was inadmissible hearsay and did not constitute an adopted admission, as the trial court held. We hold that, assuming without deciding the trial court erred, any error was harmless. Accordingly, we affirm.

BACKGROUND

"On appeal, 'we review the evidence in the light most favorable to the Commonwealth, granting to it all reasonable inferences fairly deducible therefrom.'" Archer v. Commonwealth, 26 Va. App. 1, 11, 492 S.E.2d 826, 831 (1997) (quoting Martin v. Commonwealth, 4 Va. App. 438, 443, 358 S.E.2d 415, 418 (1987)).

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

So viewed, the evidence proved that James Britt was last seen on April 11, 2011.  Several days later, the police reported to Britt's residence after his family and friends were unable to contact him.  The police discovered Britt's house had been damaged and smelled of paint and bleach.  Large pieces of carpeting and padding had been cut out of the carpets in the bedroom and living room.  The remaining carpet had white marks that appeared to be bleach stains and portions of the walls appeared to have been recently painted.  Stains that appeared to be blood spatter were also on the walls and ceiling.  Later testing confirmed that blood spatter on some of the walls and doors were beneath the fresh paint.  Furniture inside the house had been moved.  A trash bag in the garage contained pieces of Britt's teeth, a .9 millimeter FC Luger cartridge casing, Britt's blood-stained clothing, bottles of cleaning supplies, Britt's driver's license which had been cut in pieces, Britt's wallet, and a small slip of paper linked to a Florida company with which appellant was associated.  A paint can bearing appellant's fingerprint was in the garage along with a piece of carpet padding with Britt's blood on it.  Paint from the can was consistent with the fresh paint on the walls inside Britt's house.  Britt's blood and appellant's fingerprints were also located inside the residence.  A bullet matching the casing from the trash bag was embedded in Britt's bedroom wall and had been covered with putty.  The police also found appellant's locked vehicle in Britt's driveway.  Three of Britt's cars were missing from the property.

Britt operated a car business and had worked with appellant.  In the weeks prior to his disappearance, Britt had told his employees and friends that he no longer planned to work with appellant because appellant had done poor work and owed him money.  Britt told the witnesses that he had informed appellant that he no longer wished to work with him.  One witness testified he observed appellant and Britt engage in a heated argument soon before Britt's disappearance.

Days before Britt's disappearance, he told two witnesses, Scott Lunde and Arthur Veras, that appellant had arrived at his residence carrying a crowbar. Lunde explained Britt appeared upset by the encounter and "didn't like people to . . . come into [his] house talking business, especially late at night."

The police found a crowbar in a vehicle owned by appellant. The vehicle was located in Florida, where appellant lived, and one of Britt's neighbors had seen it at Britt's residence shortly before Britt's disappearance. The police also recovered from appellant numerous titles to cars owned by Britt. Appellant claimed Britt had sold or given him the car titles. Names other than Britt's appeared as the seller on some of the titles. A handwriting expert testified appellant could not be eliminated as the author of the seller signatures on the titles. Two of Britt's cars were found at appellant's girlfriends' houses. At one of the residences, the police also found a piece of carpet on appellant's lawnmower. The carpet was damp and smelled of bleach. The fibers matched the carpet in Britt's residence.

Inside appellant's vehicle, which had been locked and parked on Britt's property, the police found a receipt for .9 millimeter FC Luger caliber cartridges from a gun shop. During the testimony of Mary T. McCurdy of the police forensic services unit, the Commonwealth introduced the receipt. The receipt was dated prior to the date the victim was last seen and was for ammunition that matched the casing and a bullet found at the victim's residence. Over appellant's hearsay objection, the trial court allowed the receipt to be introduced at trial. Although appellant denied ever owning a gun, his car contained ammunition and gun cleaning supplies.

Appellant exhibited an injury to his forehead at an April 21, 2011 interview with the police. During the interview, appellant admitted having twice entered Britt's residence during the week of April 11, 2011. At first, he claimed several times that he had only gone through the garage

to the kitchen to retrieve car keys. Later, however, after one of the detectives told appellant his DNA had been located in the living room, appellant told a different version of the events which included his going into the living room to check for mail.[1]

Pastor K. Irby testified appellant was enrolled in ministerial classes at his church in Florida during April 2011. Irby explained that on the weekend of April 8, 2011, appellant informed him that he would miss the following week's classes because "he had been called up on military maneuvers." Later, when he returned to class, appellant told Irby he had been in the Middle East. In fact, appellant had not gone to the Middle East and specifically misrepresented his whereabouts to his pastor.

## ANALYSIS

"In this case, as in all others, we seek to decide cases, 'on the best and narrowest ground available' from the record." Kirby v. Commonwealth, 50 Va. App. 691, 698 n.2, 653 S.E.2d 600, 603 n.2 (2007) (quoting Miles v. Commonwealth, 274 Va. 1, 2, 645 S.E.2d 924, 925 (2007) (Kinser, J., concurring) (citations omitted)). A defendant "is entitled to a fair, but not perfect, trial, as there are no perfect trials." Blevins v. Commonwealth, 267 Va. 291, 297, 590 S.E.2d 365, 368 (2004). Where a defendant alleges the trial court erred concerning hearsay testimony, we may assume without deciding the error occurred, apply a harmless error analysis, and affirm if we conclude the error was harmless. Adams v. Commonwealth, 275 Va. 260, 277, 657 S.E.2d 87, 97 (2008).

---

[1] In fact, the police had not found appellant's DNA in the living room. Detective P. Grover testified he told appellant they found DNA "[t]o see if he would change his story, to see if it would bring any other stories out." Grover confirmed that is "a common police interrogation technique."

Our Supreme Court has adopted the test of the United States Supreme Court for determining non-constitutional harmless error. Billips v. Commonwealth, 274 Va. 805, 810, 652 S.E.2d 99, 102 (2007). That test has been stated as follows:

> "If, when all is said and done, the conviction is sure that the error did not influence the jury, or had but slight effect, the verdict and the judgment should stand . . . . But if one cannot say, with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error, it is impossible to conclude that substantial rights were not affected . . . . If so, or if one is left in grave doubt, the conviction cannot stand."

Clay v. Commonwealth, 262 Va. 253, 260, 546 S.E.2d 728, 731-32 (2001) (quoting Kotteakos v. United States, 328 U.S. 750, 764-65 (1946)). "Under this standard, non-constitutional error is harmless if other evidence of guilt is so 'overwhelming' and the error so insignificant by comparison that we can conclude the error 'failed to have any "substantial influence" on the verdict.'" Schwartz v. Schwartz, 46 Va. App. 145, 159, 616 S.E.2d 59, 66 (2005) (quoting United States v. Lane, 474 U.S. 438, 450 (1986)).

In this case, the contested evidence linked appellant to the cartridge casing found in the bag in Britt's garage and from there to the concealed bullet found embedded in Britt's bedroom wall. However, in addition to the receipt the police found in appellant's car, the police also found ammunition and weapon cleaning equipment, which independently established appellant likely had access to some type of firearm, despite his contention that he never owned a firearm. Furthermore, because Britt's body was never discovered, his cause of death was undetermined. The evidence proved appellant also possessed a crowbar, which he admitted having carried to Britt's residence. The prosecution suggested a crowbar could also have been used to kill Britt.

Additionally, the jury was presented with an enormous amount of evidence linking appellant to Britt's murder and its attempted concealment. The Commonwealth presented evidence

demonstrating possible motives appellant had to kill Britt, including their recent argument and the possibility of financial gain. Appellant possessed numerous items of Britt's personal property, and the evidence of forged titles suggested appellant obtained the titles without Britt's permission. Appellant's DNA and fingerprints were located throughout the residence, and appellant's inconsistent accounts of his entry into the house called his version of the events into question. Appellant was in possession of the bleached carpeting that had been removed from Britt's house and his fingerprints were found on a paint can matching the paint used to cover the walls after blood had been spattered on them, suggesting appellant was the person who removed Britt's body and attempted to conceal evidence of Britt's murder. Finally, appellant was shown to have lied to his pastor regarding his whereabouts at the time of Britt's disappearance, indicating he tried to conceal the fact that he was in Virginia at the time the crime was committed.

The focus of the trial was whether appellant killed Britt. The question before the jury was not by what method – gunshot or crowbar or otherwise – but, rather, did appellant kill Britt. No issue before the jury was firearm related. The contested receipt was of minimal evidential value; even if error, that error was non-constitutional and thus harmless upon the massive evidence of guilt otherwise adduced. Upon review of the entire record, we conclude that the evidence of the receipt for ammunition "had little, if any, tendency to prejudice the jury against [appellant] because it was so inconsequential when viewed in comparison to the overwhelming evidence of [appellant's] guilt." Hanson v. Commonwealth, 14 Va. App. 173, 176, 416 S.E.2d 14, 16 (1992). Considering the extensive amount of direct and circumstantial evidence linking appellant to the murder, it plainly appears "that the parties have had a fair trial on the merits and substantial justice has been reached."

Lavinder v. Commonwealth, 12 Va. App. 1003, 1005, 407 S.E.2d 910, 911 (1991) (*en banc*).

Accordingly, any error by the trial court was harmless.

For the foregoing reasons, we affirm the judgment of the trial court.

<u>Affirmed.</u>