COURT OF APPEALS OF VIRGINIA

Present:   Judges Humphreys, Petty and Decker
Argued at Richmond, Virginia

UNPUBLISHED

AMANDA C. PADULA-WILSON

MEMORANDUM OPINION* BY
v.       Record No. 1203-14-2              JUDGE MARLA GRAFF DECKER
                                           APRIL 14, 2015

MICHAEL G. WILSON

FROM THE CIRCUIT COURT OF CHESTERFIELD COUNTY
Herbert C. Gill, Jr., Judge

Amanda C. Padula-Wilson (Parental Rights Law Center, on briefs),
for appellant.

Michael G. Wilson (Anne Brakke Campfield; Barnes & Diehl, P.C.,
on brief), for appellee.


Amanda C. Padula-Wilson (the mother) appeals a final custody order of the circuit court.

She argues that the court erred by admitting certain expert testimony, by precluding her expert

witness from testifying, by depriving her of due process, by finding no abuse by the father, and

by abdicating its judicial responsibility.  Michael G. Wilson (the father) asks this Court to award

him attorney's fees and costs incurred on appeal.  For the reasons that follow, we affirm in part,

reverse and remand in part, and deny the father's request for attorney's fees and costs.

I.  BACKGROUND

The parties married in 1999.  They had three children, who were twelve (A.W.), eight

(C.W.), and four (A.G.W.) years old at the time of the parties' separation in 2012.  On January 3,

2013, the parties agreed to a *pendente lite* order governing custody and visitation.  Pursuant to

that order, the father was allowed supervised visitation with the children.  The order did not

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

specify primary custody of the children, but by implication allowed the children to continue living with the mother. On August 12, 2013, the circuit court issued a letter opinion awarding primary physical custody of the children to the father and visitation to the mother.

At a hearing on August 20, 2013, the father presented evidence that the mother was "psychotic" and had experienced a "break from reality." The circuit court entered an order on that day retaining *pendente lite* physical custody with the father. It also directed the mother to seek mental health treatment and barred her from visitation with the children.

The mother filed a motion to change custody, and the circuit court heard the motion on December 6 and December 30, 2013. The court issued a letter opinion on January 27, 2014, retaining primary physical custody with the father and allowing the mother supervised visitation.

The mother again made a motion requesting a change in custody. The circuit court heard her motion on May 8, 2014. The court issued a letter opinion on May 16, 2014, affirming the earlier decision to award the father sole physical and legal custody of the children. The court provided that the mother would "continue to have visitation based on the recommendations of" one of the psychologists involved with the case.

The court issued a final custody order on June 20, 2014. The order incorporated the findings made in its previous letter opinions. It awarded the father sole legal and physical custody of the children and allowed the mother supervised visitation.

## II. ANALYSIS

On appeal of the circuit court's final custody order, the mother asks this Court to reverse and remand the case for a new hearing. She argues that the circuit court erred by: (A) admitting certain expert testimony, (B) excluding her expert's testimony, (C) depriving her of her constitutional rights, (D) failing to find that the father abused the children, and (E) abdicating its

judicial responsibility. The father contends that the circuit court did not err and asks for an award of attorney's fees and cost incurred on appeal.

### A. *Admission of Expert Testimony*

The mother argues that the circuit court abused its discretion by admitting the expert testimony of Jill Gasper, Michelle Nelson, Laura Wert, and Cara Campanella. She suggests that the circuit court impermissibly allowed witnesses to testify to conclusions of law by making recommendations on custody arrangements. She also contends that Nelson's testimony and report contained inadmissible hearsay. Further, the mother alleges that Campanella testified beyond the scope of her expertise. Finally, she suggests that the father did not timely identify Gasper, Campanella, and Wert as witnesses.[1]

A circuit court's decision to admit expert testimony rests within the sound discretion of that court. Farrell v. Warren Cnty. Dep't of Soc. Servs., 59 Va. App. 375, 429, 719 S.E.2d 329, 355-56 (2012). However, a ruling that is "plainly wrong . . . amounts to an abuse of discretion." Condo. Servs. v. First Owners' Ass'n of Forty Six Hundred Condo., Inc., 281 Va. 561, 575, 709 S.E.2d 163, 172 (2011). This Court reviews a decision admitting expert evidence in the context of the particular circumstances of the case. See Farrell, 59 Va. App. at 429-31, 719 S.E.2d at 356-57. We review the challenges under these well-established legal principles.

---

[1] To the extent the mother raises in her assignments of error the claims that the circuit court improperly allowed Gasper to testify to conclusions of law and that it applied the wrong legal standard in determining that the testimony of Gasper, Nelson, Wert, and Campanella was scientifically reliable, she does not address these issues in the argument portion of her brief. See Rule 5A:20(e) (requiring the appellant's brief to include "argument . . . relating to each assignment of error"). Consequently, we decline to consider them. See Jay v. Commonwealth, 275 Va. 510, 520, 659 S.E.2d 311, 317 (2008) (holding that this Court "may treat a question presented as waived" if a party fails to adhere to the requirements of Rule 5A:20); Fox v. Fox, 61 Va. App. 185, 206, 734 S.E.2d 662, 672 (2012) (holding that the appellant waived an argument on appeal due to significant procedural deficiencies in the opening brief).

## 1. Conclusions of Law

The mother contends that the circuit court improperly allowed Cara Campanella, Dr. Michelle Nelson, and Dr. Laura Wert to testify to conclusions of law when they stated their recommendations for visitations.

Campanella, a counselor, testified about the therapy she provided to A.W. and A.G.W. When asked whether she had an opinion regarding visitation between A.W. and the mother, Campanella answered that it was "difficult" to make a recommendation because she had not observed A.W. interact with the mother. She did, however, recommend that A.W. have some one-on-one visitation with the mother. Campanella noted that she did not advise against the mother also having combined visitation with all three children. Campanella additionally testified that she had recommended to the father that visitation occur in a "therapeutic setting."

Nelson, a clinical psychologist, testified about her evaluation of the mother and the mother's relationship with the children. Dr. Nelson opined that the children "absolutely need contact with their mother." She specified that she believed "therapeutic or supervised individual visitation with the children" would be beneficial to the family. Nelson explained that the mother's relationship with each child would progress at a unique pace and concluded that the visitation schedule would ideally allow for increased visitation as the parent-child relationships improved.

Dr. Wert, also a clinical psychologist, testified about her therapy sessions with C.W. She explained that if supervised visitation with the mother went well, visitation could be increased. Wert also recommended that any phone contact between C.W. and the mother be supervised.

Code § 8.01-401.3(B) provides that although under certain circumstances an expert may testify as to an opinion, "in no event shall such witness be permitted to express any opinion which constitutes a conclusion of law." See also Rule 2:704(a) (noting that although an expert

witness in a civil case may testify as to the ultimate issue of the case, such a witness may not offer an opinion that is a conclusion of law). The mother contends that the witnesses' recommendations regarding custody and visitation were conclusions of law, because the circuit court's ultimate custody and visitation determinations were part of the final judgment.

The circuit court was required to determine custody and visitation arrangements. Code § 20-124.2. The law provides that "the court may order an independent mental health or psychological evaluation to assist the court in its determination of the best interests of the child." Code § 20-124.2(D). The Code includes a list of factors that lower courts are required to consider in determining custody and visitation arrangements. Code § 20-124.3. Determinations of custody and visitation based upon the statutory factors are clearly legal conclusions. However, the challenged testimony does not suggest that the experts based their recommendations on the statutorily required factors. The recommendations from the mental health experts who testified were *professional* determinations, not legal conclusions. Accord M.E.D. v. J.P.M., 3 Va. App. 391, 407, 350 S.E.2d 215, 225 (1986) (instructing the circuit court on remand to consider the recommendations of the clinical psychologist). Therefore, we hold that the circuit court did not abuse its discretion in allowing the witnesses to provide their custody and visitation recommendations.

### 2. Hearsay

The mother contends that Dr. Nelson's report and testimony improperly relied on inadmissible hearsay from Dr. Bowers. The father argues that the bases for Nelson's conclusions were properly admitted into evidence. He alternatively suggests that any error was harmless because any inappropriate references to Bowers' evaluation did not affect the decision.

Nelson documented her psychological evaluation of the mother in a twenty-nine-page report. She considered numerous materials for the purpose of her examination, including a

psychological evaluation by Dr. Bowers. Nelson's report included a written summary from Bowers stating that the mother "seem[ed] obsessed with her children and it [was] very difficult for her to put this entire situation in a context that allows both [her] and her husband to be co-parents with a respect for the role they must play together and as individuals." Nelson wrote in the report that she shared Bowers' concerns about the mother's "narcissistic personality features."

The mother objected to the admission of portions of Nelson's report that relied on statements by other mental health professionals, contending that they were hearsay. The circuit court admitted the report into evidence. In addition, Nelson testified about her evaluation of the mother and the mother's relationship with her children. Nelson stated during direct examination that "[t]he psychological testing that was done by both myself and Dr. Bowers, as well as my observations and information from Dr. Bowers, indicate that [the mother] ha[d] issues with what I would call narcissism." She specifically noted that the mother consistently believed that she was correct and as a result had difficultly compromising. Nelson further addressed the mother's inability to separate the needs of the children from her own. The third characteristic that Nelson observed in the mother was her difficulty in understanding how other people perceived her "behaviors and comments." Nelson also expressed her opinion that the mother was not cooperative with co-parenting.

In its January 27, 2014 letter opinion, the circuit court noted that it had previously "thoroughly addressed" the mother's mental condition.[2] It continued, however, that "new evidence from the evaluations of Dr. Bowers and Dr. Nelson must be addressed." The court

___

[2] In its August 12, 2013 letter opinion, the court found that the mother "report[ed] never having been in counseling, been prescribed psychotropic medications, or been psychiatrically hospitalized before the commencement of this litigation." The circuit court noted, however, that Nelson had concluded that the mother's "psychological insight" was "variable to poor." In that opinion, the court awarded physical custody to the father and unsupervised visitation to the mother.

- 6 -

noted that Dr. Bowers evaluated the mother and concluded that she "possess[ed] narcissistic personality features." Additionally, the circuit court mentioned Dr. Bowers' conclusion that the mother "ha[d] an extremely difficult time being a co-parent." The court ultimately concluded that the father would retain primary custody of the children and the mother would have supervised visitation.

"In any civil action any expert witness may give testimony and render an opinion or draw inferences from facts, circumstances or data made known to or perceived by such witness at or before the hearing or trial during which he is called upon to testify." Code § 8.01-401.1. The third-party information relied upon by the witness "need not be admissible" if it is "of a type normally relied upon by others in the particular field of expertise in forming opinions." Id.; see also M.E.D., 3 Va. App. at 400-01, 350 S.E.2d at 221-22 (holding that under the statute, an expert may draw upon inadmissible hearsay in forming his or her opinion). However, "Code § 8.01-401.1 does not authorize the admission in evidence, upon the direct examination of an expert witness, of hearsay matters of opinion upon which the expert relied in reaching his own opinion." McMunn v. Tatum, 237 Va. 558, 566, 379 S.E.2d 908, 912 (1989). Consequently, based upon this record, the circuit court abused its discretion in admitting the hearsay of Bowers' conclusions during the direct examination of Nelson.

Where an error occurs, this Court will not reverse the judgment if "it plainly appears from the record and the evidence given at the trial that the parties have had a fair trial on the merits and substantial justice has been reached." Code § 8.01-678. A non-constitutional error such as this one is harmless if it is clear that the error "'did not influence the [fact finder], or had but slight effect.'" Schwartz v. Schwartz, 46 Va. App. 145, 159, 616 S.E.2d 59, 66 (2005) (alteration in original) (quoting Clay v. Commonwealth, 262 Va. 253, 260, 546 S.E.2d 728, 731 (2001)). "[R]elevant to the harmless error analysis is whether the evidence admitted in error is

- 7 -

merely 'cumulative' of other, undisputed evidence." Id. at 160, 616 S.E.2d at 67 (quoting Brecht

v. Abrahamson, 507 U.S. 619, 639 (1993)).

Although some of the conclusions of Dr. Bowers were mirrored by Dr. Nelson, the

mother certainly disputed that evidence. Thus, we cannot say that the inadmissible hearsay from

Bowers was "merely 'cumulative' of other undisputed evidence." Id. (quoting Brecht, 507 U.S.

at 639. The circuit court specifically referenced and expressly relied on Bowers' opinions.

Therefore, we cannot hold that the inadmissible evidence relating to Bowers' assessment did not

influence the circuit court's decision. Consequently, we conclude that the error was not

harmless.

### 3. Scope of Expert Designation

The mother alleges that Campanella testified beyond the scope of her expert designation

under Rule 4:1(b)(4)(A)(i). The father's expert witness disclosure stated that Campanella was

expected to testify about her therapy sessions with A.W. The disclosure provided that

"Campanella does not want to interfere with [A.W.]'s progress in therapy by revealing his

confidences."

At the December 6, 2013 hearing, the mother stipulated that Campanella was an expert.

The father asked Campanella about concerns raised by A.W. The mother objected to the

response as revealing confidences, contrary to the father's expert designation, and the court

sustained the objection. The guardian *ad litem* asked Campanella about "a couple of tearful

instances" with A.W. The mother objected because the expert designation specifically stated

that Campanella would not reveal personal information about A.W. The guardian *ad litem*

responded that the expert designation was not his. The court overruled the objection and allowed

the testimony. On appeal, the mother challenges this testimony elicited by the guardian *ad litem*.

Rule 4:1(b)(4)(A)(i) provides that "[a] party may through interrogatories require any other party to identify" each expected expert witness and "state the substance of the facts and opinions to which the expert is expected to testify." The purpose of the disclosure requirement in Rule 4:1(b) is to provide the parties the opportunity "'to discover the expert witnesses' opinions in preparation for trial.'" Condo. Servs., 281 Va. at 576, 709 S.E.2d at 172 (quoting Woodbury v. Courtney, 239 Va. 651, 654, 391 S.E.2d 293, 295 (1990)). The mother did not serve the guardian *ad litem* with interrogatories. Thus, the circuit court did not abuse its discretion in ruling that the guardian *ad litem* was not limited by the scope of expected testimony provided in the father's disclosure.[3] See Hey v. Arlington Cnty. Dep't. of Human Servs., Nos. 2795-07-4, 2796-07-4, 2840-07-4, 2008 Va. App. LEXIS 572, at *6-7 (Va. Ct. App. Dec. 30, 2008) (assuming *arguendo* that it was error under Rule 4:1 to allow the defendant to call the expert to testify without prior notice to Hey, but holding that any error was harmless because of the guardian *ad litem*'s ability to present the witness as her own).

For these reasons, we hold that the circuit court did not abuse its discretion in allowing Campanella's testimony at the December 6, 2013 hearing.[4]

### 4. Timeliness of Disclosure of Expert Witnesses

The mother suggests that the father did not timely identify Gasper, Campanella, and Wert as expert witnesses. The father contends that Gasper's testimony was reasonable in light of the circumstances that necessitated the August 20, 2013 emergency hearing. He also argues that he

---

[3] In light of our holding that the father's expert witness disclosure did not limit the scope of testimony that the guardian *ad litem* could solicit from the witness, we do not address the husband's argument that the circuit court was not plainly wrong in determining that the expert designation sufficiently encompassed Campanella's testimony.

[4] The mother cites John Crane, Inc. v. Jones, 274 Va. 581, 650 S.E.2d 851 (2007), in support of her proposition that an expert witness' testimony *must* be limited to the scope of the expert disclosure pursuant to Rule 4:1(b). That case is unpersuasive here, however, because it interpreted the strictness of the disclosure requirement in Rule 4:1(b) as applied to the disclosing party. Id. at 591-96, 650 S.E.2d at 856-57.

did not need to identify Campanella in his expert disclosure because at one hearing she testified as a lay witness and at the other hearing she was a witness for the guardian *ad litem*. Last, the father suggests that the mother was not prejudiced because her expert could not possibly rebut Campanella or Wert.

At the August 20, 2013 hearing, the father raised information that he had learned the preceding weekend. The father and guardian *ad litem* asked for the father to receive sole custody and the mother to have no visitation with the children. The father alleged that he was "fearful for the health and safety" of the children.

The mother objected to Gasper testifying because she had received no notice. The father responded that "this [was] an emergency situation." The court allowed Gasper to testify. Gasper testified about photographs that the mother sent to A.W. Gasper opined that the mother was "totally psychotic at this point." She recommended that the court shift custody to the father and not allow the mother to have contact with the children for at least thirty days.

Following the hearing, the circuit court entered a *pendente lite* order for custody, as permitted by Code § 20-103, awarding the father primary physical custody of the children. A *pendente lite* award does not have a presumptive effect and shall "not be determinative when adjudicating the underlying cause." Code § 20-103(E). The parties had subsequent hearings in December and May, at which the mother had the opportunity to present evidence. The final custody order did not reference Gasper's testimony at the August hearing. In light of the nature of the August *pendente lite* hearing, the mother's opportunity to present further evidence at subsequent hearings, and the lack of apparent effect on the final custody order, we hold that any error in admitting Gasper's testimony was harmless. See Schwartz, 46 Va. App. at 159, 616 S.E.2d at 66 (holding that a non-constitutional error is harmless if it is clear that the error "'did

not influence'" the finder of fact or "'had but slight effect'" (quoting Clay, 262 Va. at 260, 546 S.E.2d at 731)).

Wert and Campanella testified at the December 6, 2013 hearing. The mother received notice of their expected appearance almost a month in advance. When the mother objected to their testimony, the father responded that she had the opportunity to talk to both of them and her expert had the opportunity to review their depositions. The guardian *ad litem* also asked the circuit court to allow testimony from Wert and Campanella. The circuit court permitted the two witnesses to testify.

Campanella again testified at the May 8, 2014 hearing, as a witness summoned by the guardian *ad litem*. When the mother objected that she had received notice only three business days beforehand, the guardian *ad litem* responded that he had not been served with any discovery and, thus, was not required to provide the mother with notice. The court again allowed Campanella to testify.

As discussed *supra*, Rule 4:1 provides a party *the opportunity* to discover witnesses, and consequently the burden of discovery is on the party seeking it. See Condo. Servs., 281 Va. at 576, 709 S.E.2d at 172. The mother did not serve the guardian *ad litem* with interrogatories, and thus he was not required to disclose his expert witnesses under Rule 4:1(b)(4)(A)(i). Therefore, the circuit court did not err by allowing Campanella to testify when called as a witness by the guardian *ad litem* at the May hearing. Further, any error in allowing Campanella and Wert to

testify as witnesses for the father at the December hearing was harmless in light of the guardian *ad litem*'s request to call them as witnesses.  See Hey, 2008 Va. App. LEXIS 572, at *6-7.[5]

### B.  Exclusion of Evidence

The mother contends that the circuit court abused its discretion by excluding the testimony and report of Arlo West.  She offered West's testimony in conjunction with her motion to set aside the circuit court's August 12, 2013 custody determination and for a new hearing to consider newly discovered evidence.  The mother argues that the court erroneously applied Daubert v. Merrell Dow Pharmaceuticals, 509 U.S. 579 (1993), in deciding that her evidence was inadmissible.

Again, "[t]he decision whether to admit expert testimony rests within the sound discretion of the trial judge" and will be reversed on appeal only if the trial court abused its discretion under the particular circumstances of the case.  Farrell, 59 Va. App. at 429-31, 719 S.E.2d at 355-57.  However, a ruling that is "plainly wrong . . . amounts to an abuse of discretion."  Condo. Servs., 281 Va. at 575, 709 S.E.2d at 172.  "Generally, when a specific objection is made to evidence or when inquiry is made by the trial judge concerning the purpose of evidence, the proponent of the evidence has the burden of establishing its admissibility."  Neal v. Commonwealth, 15 Va. App. 416, 420, 425 S.E.2d 521, 523 (1992).

---

[5] The mother further argues that the circuit court erred at the May hearing by "converting" Campanella from an expert witness to a lay witness but allowing her to testify to her opinions.  The only authority the mother cites in support of this argument is Rule 4:1(d)(1). Rule 4:1(d) pertains to the "sequence and timing of discovery."  This rule is not relevant to the question of whether Campanella's testimony, in which she stated a past recommendation that she had made, was lay testimony relating to past events or expert testimony offering her professional opinion.  Accordingly, the mother failed to provide any relevant authority on this issue.  See Rule 5A:20(e) (requiring the appellant's brief to include principles of law and authorities on each assignment of error).  We therefore consider the argument waived.  See Jay, 275 Va. at 520, 659 S.E.2d at 317 (holding that this Court "may . . . treat a question presented as waived" if the party fails to adhere to the requirements of Rule 5A:20); Fox, 61 Va. App. at 206, 734 S.E.2d at 672.

The mother sought to introduce the testimony of West as a forensic audio expert at the May 8, 2014 hearing. The father objected, and the court reviewed West's deposition in order to determine whether the witness qualified as an expert.

On *voir dire* during the deposition, West stated that his forensic audio certification covered voice analysis. He explained that the week-long certification course also taught video authentication, video analysis, and video enhancements. West stated that voice analysis involved examining a "visual representation of sound," referred to as a spectrogram. He explained further that performing "spectrogram analysis" meant studying an image that depicts the entire length of an audio recording whereas "spectral analysis" looked at smaller, "individual slices" of such a recording. West elaborated that voice analysis included determining whether emotions were involved, including pain. He stated that a scream resulting from pain differed scientifically from one resulting from a tantrum. When asked if his "theory could be tested," West responded that he "would think so."

The mother played a recording of a 9-1-1 call that C.W. made while in the father's custody. West testified that he did both a spectrogram analysis and a spectral analysis on the recording. He identified two points in the recording that he concluded reflected "some sort of pressure" on the person screaming. In particular, West stated that at one point the pressure caused pain to the person screaming. In conducting the analysis, West compared the 9-1-1 recording with other recordings obtained from the YouTube video website: one of two brothers trapped during a house fire, another of two young females who were shot, and a third by someone in the World Trade Center before it collapsed.

The father objected to West's testimony, arguing that he was "not a scientific expert, according to Daubert." The court ruled that the testimony was inadmissible. In doing so, the

court applied <u>Daubert</u> due to the "highly scientific nature" of the proffered testimony, but noted

that <u>Daubert</u> was not always the appropriate standard in Virginia. The court specifically found:

> The factors the Court must consider under the <u>Daubert</u> test are: (1) whether the theory or technique in question can be and has been tested; (2) whether it has been subjected to peer review and publication; (3) [what] its known or potential error rate [is]; (4) the existence and maintenance of standards controlling its operation; and (5) whether it has attracted widespread acceptance within a relevant scientific community.

The court went on to state:

> In his testimony, Mr. West provided little information regarding these factors. Indeed, Mr. West provided no concrete information about his scientific method. He admitted that there is little peer review in his field. He has never been published. He failed to give any substantial answer about error rate. Additionally, no testimony was offered about the acceptance of his method in the scientific community. Finally, Mr. West was incapable of providing one instance where he had previously used his method to identify if a recorded voice was experiencing pain.

It is clear that a witness "qualified as an expert" may testify to opinions based on

"scientific, technical, or other specialized knowledge" if that testimony will assist the trier of fact

in a civil proceeding. Code § 8.01-401.3(A). In Virginia,

> "[w]hen scientific evidence is offered, the court must make a threshold finding of fact with respect to the reliability of the scientific method offered, unless it is of a kind so familiar and accepted as to require no foundation to establish the fundamental reliability of the system, such as fingerprint analysis; or unless it is so unreliable that the considerations requiring its exclusion have ripened into rules of law, such as 'lie-detector' tests; or unless its admission is regulated by statute, such as blood-alcohol test results."

<u>Billips v. Commonwealth</u>, 274 Va. 805, 808-09, 652 S.E.2d 99, 101 (2007) (quoting <u>Spencer v.</u>

<u>Commonwealth</u>, 240 Va. 78, 97, 393 S.E.2d 609, 621 (1990)). "When a litigant claims that a

particular scientific, technical or other specialized theory or technique is valid, there must be

- 14 -

some basis for determining the validity of the proffered theory or technique."[6] Shooltz v. Shooltz, 27 Va. App. 264, 274, 498 S.E.2d 437, 442 (1998) (citing application of Spencer in Satcher v. Commonwealth, 244 Va. 220, 244, 421 S.E.2d 821, 835 (1992)).  Virginia has not adopted the framework for admissibility of scientific evidence provided in Daubert.  See, e.g., Billips, 274 Va. at 808-09, 652 S.E.2d at 101 ("[T]he Spencer rule applies to the use of scientific evidence in judicial proceedings generally."); Pope v. Commonwealth, 60 Va. App. 486, 515-16, 729 S.E.2d 751, 765-66 (2012) (affirming the trial court's decision to exclude scientific evidence under Spencer).  See generally D. Arthur Kelsey, Virginia's Answer to Daubert's Question Behind the Question, 90 Judicature 68, 70-71 (2006) (noting that "the Virginia General Assembly has rejected invitations to rewrite" the statute pertaining to the admission of scientific evidence "to better conform the Rule to the specific language of Daubert," and the "Virginia Supreme Court likewise has taken note of Daubert, but has conspicuously declined to adopt it").  We hold that the circuit court erred by evaluating the admissibility of the proposed evidence through the lens of Daubert.

Therefore, we reverse and remand on this issue.  On remand, the trial court shall consider the scientific reliability of the evidence offered by the mother under the analytical framework enunciated in Spencer, 240 Va. 78, 393 S.E.2d 609, and its progeny.

---

[6] The mother suggests that the restrictions on admissibility stated in Tarmac Mid-Atlantic v. Smiley Block Co., 250 Va. 161, 166, 458 S.E.2d 462, 465 (1995), provide a three-prong test for evaluating whether scientific evidence is reliable.  Tarmac simply specifies a few scenarios in which expert testimony is inadmissible:  if it is "speculative," it is "founded on assumptions that have no basis in fact," or the trial court is not "satisfied that the expert . . . considered all the variables bearing on the inferences to be drawn from the facts observed."  Id. at 166, 458 S.E.2d at 465-66; accord John v. Im, 263 Va. 315, 320, 559 S.E.2d 694, 696 (2002).  The opinion does not, contrary to the mother's assertion, provide that all expert evidence falling outside of these circumstances is admissible.

- 15 -

## C. *Constitutional Rights*

The mother contends that the circuit court deprived her of her constitutional rights to due process and equal protection. Specifically, she argues that it was unconstitutional for the circuit court to base its custody and visitation determinations on the best interests of the children. She further suggests that the court violated procedural due process by failing to provide her a prompt hearing, failing to consider the removal of the guardian *ad litem*, and shifting the burden of proof to her.

A portion of the mother's arguments, including those related to the Equal Protection Clause, are based on the premise that the circuit court rendered a "*de facto*" termination of her parental rights by allowing her only supervised visitation. At the outset, we emphasize that the circuit court did not terminate the mother's parental rights. A termination of parental rights divests a parent "of all legal relations to the child, and the parent has no legal right to even communicate [with] or visit that child." Haugen v. Shenandoah Valley Dep't of Soc. Servs., 274 Va. 27, 34, 645 S.E.2d 261, 265 (2007). The order providing that the mother have supervised visitation with the children, in contrast, did not sever her legal relationship with them.

The mother contends that the provisions within Code §§ 20-124.2 and -124.3 requiring that supervised visitation be based on the best interests of the children are unconstitutional. She suggests that under Troxel v. Granville, 530 U.S. 57 (2000), the appropriate legal standard would necessitate a finding that she was an unfit parent. In Troxel, the Supreme Court of the United States held that the statutory best-interests test was unconstitutional if it authorized a court to "disregard and overturn any decision by a fit custodial parent concerning visitation whenever a third party affected by the decision files a visitation petition, based solely on the judge's determination of the child's best interests." Id. at 67. This Court has already addressed the limits of Troxel and held that it does not apply to "[c]ustody and visitation disputes between two

fit parents." Griffin v. Griffin, 41 Va. App. 77, 83, 581 S.E.2d 899, 902 (2003). In circumstances involving two fit parents, "one parent's fundamental right [is] pitted against the other parent's fundamental right," and the "best interests" test in Code § 20-124.3 applies. Id. Therefore, the circuit court's consideration of the best interests of the children in making its custody and visitation determinations did not violate the mother's constitutional rights.

The other cases cited by the mother, L.F. v. Breit, 285 Va. 163, 736 S.E.2d 711 (2013), and Wyatt v. McDermott, 283 Va. 685, 725 S.E.2d 555 (2012), do not support a different outcome merely because they quote language from Troxel. In L.F., the Supreme Court of Virginia interpreted the assisted conception statute in light of the father's fundamental parental rights. 285 Va. at 180-84, 736 S.E.2d at 720-22. The Court held that the father's parental rights arose from his biological relationship with the child and his "full commitment to the responsibilities of parenthood." Id. at 182-83, 736 S.E.2d at 721-22. Wyatt recognized that tortious interference with parental rights is a cause of action in Virginia. 283 Va. at 699, 725 S.E.2d at 562. Neither conclusion applies here.

The mother argues that the circuit court violated her due process rights by not providing a prompt hearing following the "removal of parental rights" that occurred at the August 2013 hearing. The hearings that followed, however, moot this claim. Courts should not "'give opinions on abstract propositions of law, or . . . decide questions upon which no rights depend, and where no relief can be afforded.'" Va. Dep't of State Police v. Elliott, 48 Va. App. 551, 554, 633 S.E.2d 203, 204 (2006) (quoting Hankins v. Town of Va. Beach, 182 Va. 642, 643-44, 29 S.E.2d 831, 832 (1944)). After the August 2013 hearing, the circuit court held three additional hearings: two were four months later in December and one occurred in May of 2014. There is, quite simply, "no relief [that] can be afforded" to the mother on her claim that the circuit court

- 17 -

erred by not providing her another hearing closer in time to the August hearing.[7] See Elliott, 48

Va. App. at 554, 633 S.E.2d at 204; accord Philip Morris USA, Inc. v. Blankenship,

No. 0648-11-2, 2011 Va. App. LEXIS 357, at \*10 (Va. Ct. App. Nov. 22, 2011) (holding that the

claimant "received a hearing, thereby mooting the claim that his procedural due process rights

were violated").  Therefore, we do not address this argument.

The mother further contends that she was denied a fair trial because the circuit court

failed to consider her motion to remove the guardian *ad litem*.  The single authority the mother

cites in support of this argument is Morgan v. Illinois, 504 U.S. 719 (1992).  The mother relies

on Morgan for the proposition that due process requires both judicial inquiry into whether a juror

is biased and the removal of a biased juror.  The holding in Morgan that the right to due process

in a criminal jury trial requires a fair hearing is not relevant to whether the circuit court erred in

denying the mother's motion to remove the guardian *ad litem*.  We consider this argument

waived because the mother failed to provide any relevant authority on this issue.  See Rule

5A:20(e) (requiring the appellant's brief to include principles of law and authorities on each

assignment of error); Jay v. Commonwealth, 275 Va. 510, 520, 659 S.E.2d 311, 317 (2008)

(holding that this Court "may . . . treat a question presented as waived" if the party fails to adhere

to the requirements of Rule 5A:20(e)); see also Fadness v. Fadness, 52 Va. App. 833, 851, 667

S.E.2d 857, 866 (2008) ("If the parties believed that the circuit court erred, it was their duty to

present that error to us with legal authority to support their contention.").

Last, the mother argues that she was deprived of a fair trial in violation of her right to due

process because the circuit court shifted the burden of proof to her during the emergency hearing,

---

[7] The narrow and "exceptional situations" in which a reviewing court may address a moot issue are not present here.  Elliott, 48 Va. App. at 554, 633 S.E.2d at 204-05 (explaining that this Court will review mooted issues only in the context of "disputes of abbreviated duration where the party seeking review 'can make a reasonable showing that he will again be subjected to the alleged illegality'" (quoting City of Los Angeles v. Lyons, 461 U.S. 95, 109 (1983))).

rather than presuming that both parents have equal rights to custody. "No ruling of the trial court . . . will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling." Rule 5A:18; see also Tackett v. Arlington Cnty. Dep't of Human Servs., 62 Va. App. 296, 324, 746 S.E.2d 509, 523 (2013) ("'[E]ven due process claims will not be considered for the first time on appeal.'" (quoting Stokes v. Commonwealth, 61 Va. App. 388, 396, 736 S.E.2d 330, 335 (2013))). Rule 5A:20(c) requires the opening brief to include an "exact reference" to the record or appendix where the alleged error was preserved below. Cf. Brooks v. Commonwealth, 61 Va. App. 576, 580-81, 739 S.E.2d 224, 226 (2013) (explaining that the purpose of the exact reference requirement is "to spare the Court from having to comb the entire record to determine whether and where the alleged error was preserved"). Nowhere in the portion of the record cited by the mother as reflecting her preservation of this argument did she actually do so. Further, the August 20, 2013 transcript does not contain the appellant's objection on this issue nor does her motion to clarify and amend the resulting order. The six-volume appendix contains 2017 pages, and is only a portion of the complete record. The record itself comprises nine volumes of documents and eleven transcripts of proceedings before the circuit court. We decline to scour the record to determine whether the mother raised this issue below and find the mother's failure to include an accurate reference pursuant to Rule 5A:20(c) significant. Consequently, we consider this argument waived. See Jay, 275 Va. at 520, 659 S.E.2d at 317; Fox v. Fox, 61 Va. App. 185, 206, 734 S.E.2d 662, 672 (2012).

For these reasons, we hold that the mother's constitutional claims are either procedurally barred or without merit. The circuit court did not terminate her parental rights, nor did it violate due process by basing its determinations on the best interests of the children. We do not consider her claim that the lack of a prompt hearing following the August 2013 hearing violated her right

to due process because that issue is moot. Last, her arguments that the circuit court erred by failing to consider her motion to remove the guardian *ad litem* and shifting the burden of proof to her are procedurally barred.

### D. Evidence of Abuse

The mother suggests that the circuit court erred in finding that the evidence did not prove that the father physically abused the children. She further alleges that the father committed abuse by allowing the children's paternal grandfather, a convicted sex offender, to stay in the house with the children.

We accord the circuit court's factual findings great weight. E.g., Bottoms v. Bottoms, 249 Va. 410, 414, 457 S.E.2d 102, 104-05 (1995). As such, "these findings should not be disturbed by an appellate court unless they are plainly wrong or without evidence to support them." Id. at 414, 457 S.E.2d at 105. The circuit court examined the evidence that the father was physically abusive and found that "the [c]ourt cannot find sufficient support for the claim."

An audio recording of a C.W.'s call to emergency services was played for the court. C.W. could be heard screaming. On the recording, the father said, "Right now I'm going to break your hand." The mother testified that one time the father pushed her as she held one of the children, who was a baby at that time. The mother feared that he would kill the child. Although she had never witnessed the father abuse C.W., she had seen "red marks" on C.W. "on numerous occasions." The mother also stated that sometimes the marks developed into bruises. She testified that "frequently" C.W. would scream that the father had physically hurt him, although she never witnessed any violence against C.W.

The circuit court reviewed the Child Protective Services interview with C.W. Dr. Simpson testified that C.W. had mentioned that his father had pushed him in a manner that caused the child to be scared. Sally Martin, a licensed clinical social worker, testified that C.W.

told her, with the mother in the room, that the father physically assaulted him.  However, after Martin responded that she would report the allegation to Child Protective Services, C.W. spoke to her privately and said "it's not that serious."  Martin observed that although C.W. professed to be afraid of his father, he did not actually appear to be afraid or angry and could not provide details about the alleged incidents of abuse.

The father testified, explaining the circumstances leading up to the child's 9-1-1 call.  He stated that C.W. became angry when told to stop playing his video game.  C.W. ran outside and called 9-1-1.  The father caught him and grabbed his hand.  The father stated that he did not hurt C.W. or intend to hurt him.  He explained that he responded, "I'm about to break your hand," to C.W., when he grabbed C.W.'s hand and the child asked him what he was doing.  He clarified that he meant that his grip would break C.W.'s hand if the child kept wiggling and trying to escape the hold.

Officer Kevin Wire, with the Henrico County Police Department, responded to the emergency call.  He testified that he did not observe any marks, bruising, or other injury to C.W.'s wrist.  Officer Wire spoke with C.W. and the father and did not arrest the father.  The court also heard testimony from Detective Nicole Otero, an investigator with the Special Victims Section of the Chesterfield County Police Department.  Otero investigated the possible abuse of C.W. and concluded that she did not believe him.  Detective Alexander Wise, also with the Chesterfield Police Department, worked with Otero and conducted a forensic interview.  Wise testified that he thought C.W. "had been coached" and did not seem "as afraid of his father as he was suggesting."

Beth Gilmore, an investigator with Henrico County Social Services, testified that she assessed the allegation that the father physically abused C.W.  Gilmore ultimately recommended

that the children continue counseling and the father participate in parenting education "as an additional support for him."

Dr. Gasper, at the April 24, 2013 hearing, stated that she was not convinced that "this [was] a child abuse case" and that C.W.'s allegations of abuse were not credible. Dr. Nelson expressed similar skepticism when the mother alleged to her that the father had abused C.W. approximately eighty times and she did not once take him to the pediatrician or otherwise seek help.

Code § 16.1-228(1) defines an "abused or neglected child," in pertinent part, as a child whose caregiver "creates or inflicts, threatens to create or inflict, or allows to be created or inflicted upon such child a physical or mental injury by other than accidental means." Of the numerous professionals involved to determine the presence of abuse, not one found a reason to conclude that it existed. Although the mother suggests that it was "per se child abuse" for the father to threaten to break C.W.'s hand, the father provided an alternative explanation of the statement recorded on the emergency call that was not a threat. The circuit court's factual finding that the evidence did not prove that the father abused C.W. was not plainly wrong or without evidence to support it.

The mother further argues that the father committed child abuse under Code § 16.1-228(6) by allowing the children to stay with his own father, the children's grandfather, who has a criminal record of "improper touching" of a minor. That subsection, in pertinent part, defines an "abused or neglected child" as one whose caregiver "creates a substantial risk of physical injury by knowingly leaving the child alone in the same dwelling . . . with a person to whom the child is not related by blood or marriage and who the [caregiver] knows has been convicted" of a sexual offense against a minor listed in Code § 9.1-902. The mother's argument fails because the statute specifically excludes relatives. See Gilliam v. McGrady, 279 Va. 703,

709, 691 S.E.2d 797, 800 (2010) (noting that Virginia courts "assume that the General Assembly chose its language with care").

For these reasons, the circuit court was not plainly wrong in finding that the evidence did not prove that the father abused the children under Code § 16.1-288.

### E. Judicial Duty under Code §§ 20-124.2 and -124.3

The mother argues that the circuit court abdicated its judicial duty by allowing third parties to determine visitation. She alleges that the court, in its final custody order, erred by giving Nelson and Campanella unfettered authority to determine the terms of her visitation with the children.

The court's final custody order awarded the father sole legal and physical custody of the children. The order also provided that the mother would "continue to have visitation based on the recommendations of Dr. Michele Nelson." It clarified that the mother "shall only have unsupervised visitation with the children when and if Dr. Nelson determines it is appropriate or determines any alternatives that are in the best interests of the children." The circuit court also mandated that A.W. continue therapy with Campanella, "who shall coordinate with Dr. Nelson regarding [A.W.]'s visitation with the [mother]."

In determining whether lower courts have the discretion to order a third party to make visitation determinations, we turn to the relevant statute. "When the language of a statute is unambiguous, we are bound by the plain meaning of that language." Conyers v. Martial Arts World of Richmond, Inc., 273 Va. 96, 104, 639 S.E.2d 174, 178 (2007). Code § 20-124.2 provides, in pertinent part:

> A. In any case in which custody or visitation of minor children is at issue, whether in a circuit or district court, *the court shall provide prompt adjudication*, upon due consideration of all the facts, of custody and visitation arrangements, including support and maintenance for the children, prior to other considerations arising in the matter. . . .

- 23 -

\*     \*     \*     \*     \*     \*     \*

> D. In any case in which custody or visitation of minor children is at issue, whether in a circuit or district court, the court may order an independent mental health or psychological evaluation to *assist the court in its determination* of the best interests of the child.

(Emphases added). Further, Code § 20-124.3 provides a list of factors that the circuit court "shall consider" in "determining the best interests of a child for purposes of determining custody or visitation arrangements." A plain reading of the statutes instructs the relevant circuit or district court to make the custody and visitation adjudications and allows third party evaluations to assist in those determinations.

Previous decisions by both the Supreme Court of Virginia and this Court support this interpretation. "It is the sole province of the judiciary . . . to adjudicate cases." Holland v. Johnson, 241 Va. 553, 555, 403 S.E.2d 356, 357-58 (1991).

> "A court of equity cannot abdicate its authority or powers, nor confide nor surrender absolutely to anyone the performance of any of its judicial functions. It may rightfully avail itself of the eyes and arms of its assistants in the proper preparation for judicial determination of the many complicated, difficult, and intricate matters upon which its judgment is invoked, but in it resides the authority, and to it solely belongs the responsibility, to adjudicate them."

Raiford v. Raiford, 193 Va. 221, 230, 68 S.E.2d 888, 894 (1952) (quoting Shipman v. Fletcher, 91 Va. 473, 476, 22 S.E. 458, 460 (1895)). "'[T]he court must review the evidence, apply the correct principles of law, and make its own conclusions as to the appropriate relief required.'" Benzine v. Benzine, 52 Va. App. 256, 261, 663 S.E.2d 105, 108 (2008) (quoting Morrill v. Morrill, 45 Va. App. 709, 714, 613 S.E.2d 821, 823 (2005) (*en banc*)). Based upon the plain language of Code § 20-124.2 and the established principle that the responsibility to adjudicate cases resides with the judiciary, it was error for the circuit court to order third parties to have

complete discretion to decide the mother's visitation without providing for any judicial review of their decisions.

### F. Attorney's Fees and Costs

The father asks for an award of attorney's fees and costs associated with this appeal.

> The rationale for the appellate court being the proper forum to determine the propriety of an award of attorney's fees for efforts expended on appeal is clear. The appellate court has the opportunity to view the record in its entirety and determine whether the appeal is frivolous or whether other reasons exist for requiring additional payment.

O'Loughlin v. O'Loughlin, 23 Va. App. 690, 695, 479 S.E.2d 98, 100 (1996). The wife's appeal in part addressed "appropriate and substantial issues." See Estate of Hackler v. Hackler, 44 Va. App. 51, 75, 602 S.E.2d 426, 438 (2004). Consequently, we deny the father's request for appellate attorney's fees and costs.

### III. CONCLUSION

We hold that the circuit court did not abuse its discretion in admitting expert testimony into evidence, with the exception of the inadmissible hearsay opinion of Dr. Bowers that was contained in Nelson's report and testimony. We further conclude that the court erred in determining that the scientific evidence from West was inadmissible and in delegating its judicial responsibility by instructing third parties to determine the parameters of the mother's visitation with the children without any judicial review. The circuit court was not plainly wrong in finding that the father did not abuse the children. Last, we deny the father's request for attorney's fees and costs incurred on appeal.

Consistent with this opinion, we affirm in part and reverse and remand in part.[8]  On remand, the circuit court shall make the ultimate custody and visitation determinations without considering the hearsay evidence from Dr. Bowers and shall not delegate its judicial duty to adjudicate visitation.  Further, the court shall reconsider whether the scientific evidence offered by the mother was admissible.  The circuit court may reopen the record only if it determines that the scientific evidence is admissible.

<u>Affirmed in part, reversed and remanded in part.</u>

---

[8] The mother argues that on remand, the decision in <u>Alexander v. Flowers</u>, 51 Va. App. 404, 658 S.E.2d 355 (2008), requires a hearing before a different judge.  In <u>Alexander</u>, this Court held that the circuit court judge denied the appellant a *de novo* hearing and instead relied on the ruling of the juvenile and district relations court.  <u>Id.</u> at 414, 658 S.E.2d at 359.  The Court reversed and remanded "for a proper *de novo* hearing before a different judge."  <u>Id.</u> at 415, 658 S.E.2d at 360.  We do not find the circumstances so extraordinary here, as they were in <u>Alexander</u>, to require assigning a different judge to the case.